**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No: 16-CV-02480-WJM-CBS

| | |
|---|---|
| Gilbert T. Tso, a natural person and an American, ) | Article III, Court of Records Common Law |
| Plaintiff, ) | |
| ) | Verified Complaint for: |
| v. ) | |
| ) | =============================== |
| Rebecca Murray (a.k.a. Tso), individually, et al. ) | |
| ) | Civil RICO |
| Defendants. ) | 18 U.S.C. §§ 1962(c)(d); |
| ) | |
| ) | Injunctive Relief (Sought) |
| ) | |
| ) | Violations of Civil Rights, States & Federal Statutes |
| ) | |
| ) | Demand for Trial by Jury where permitted. |

**Plaintiff's AMENDED
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDATIONS**

Comes now Plaintiff, Gilbert T. Tso, *Pro Se/Pro Per/Sui Juris*, a natural person, an American and one of "the People of the United States," who respectfully *OBJECTS TO MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATIONS*. In support, Plaintiff states:

## PARTIAL LIST OF LEGAL CITATIONS

1. States (and state officials) responsible for the administration of federal grant, welfare and support programs are required to operate them in compliance with federal law. *Frew v. Hawkins*, 540 U.S. 431, 433 (2004); *Dalton v. Little Rock Family Planning Services*, 516 U.S. 474, 476 (1996).

2. "Where rights secured by the Constitution are involved, there can be no rule-making or legislation which would abrogate them." *Miranda v. Arizona*, 380 US 426 (1966).

3. 'Where the courts are called upon to fulfill their role as the primary guardians of the duty of fair representation,' complaints should be construed to avoid dismissals and the plaintiff at the very least 'should be given the opportunity to file supplemental pleadings unless it appears "beyond doubt" that he cannot state a good cause of action."' *Czosek v. O'Mara*, 397 U.S. at 27, 90 S.Ct. at 772.

## ARGUMENTS

**ILLINOIS DEFENDANTS.**

"Ends of Justice" Require this Court's Exercise of Jurisdiction over Illinois Defendants.

4. Plaintiff believes he'd sufficiently made the case, supported by facts, that Illinois defendants are core members of Defendants' Association-in-Fact RICO enterprise defined in Count 2 and Count 3 of the 2nd Verified Amended Complaint (SAC). Plaintiff alleges from the AT&T records obtained by subpoena [*see* ECF #202 at ¶ 96, EXHIBIT B] that defendant Rebecca Murray initially engaged and enlisted the services of Illinois defendants Ridings and KRV PC as early as 2010, at least one year before state court proceedings commenced. After defendant Rebecca Murray permanently resettled in Colorado by late 2011, litigation commenced in Illinois continued through agent defendants Ridings and KRV PC, who were instrumental in the successful execution of Defendants Association-in-Fact's racketeering schemes to victimize and injure your Plaintiff in property and business. Defendants' Association-in-Fact racketeering acts are the actual and proximate causes of Plaintiff's loss and injuries to property and business. [*See* ECF #120, at ¶¶ 100, 103-105, 115-122, 126-128, 133, 135, 137-138, 141, 148, and 149].

5. Plaintiff alleges violations of 18 U.S.C. § 1962(c) and (d), for which defendants Ridings and KRV PC were acting as agents of the criminal racketeering enterprise, integral and instrumental in the successful execution of defendants' racketeering schemes. This alone should be sufficient to satisfy the "ends of justice" criteria to invoke Fed.R.Civ.P. 4(k) and 18 U.S.C. § 1965(b) and (d)[1]. In the interest of justice, if necessary your Plaintiff should be permitted leave to amend the SAC for such a curable deficiency. In the event of involuntary dismissal for lack of personal jurisdiction, your Plaintiff reserves his right to commence a new action upon the same cause of action per Colorado Revised Statutes (CRS) §13-80-111 and/or its federal equivalent.

**COLORADO AND DENVER DEFENDANTS.**

<u>Deficiencies Identified by the Magistrate Judge in Claims #1 and #4 are Curable</u>

6. The facts and circumstances supporting your Plaintiff's 5th Amendment and 14th Amendment claims are curable under *Ex Parte Young* with a properly stated cause of action[2] and prayers for relief. Plaintiff should be allowed leave to amend Claims #1 and #4 to clarify the facts and allegations such that jurisdiction is proper under 28 USC § 1331 and 28 USC § 1367(a).

**Objections and Arguments for Leave to Amend Count #1**

<u>Causes of Action as to Statutory Rights vs. Constitutional Rights.</u>

7. Plaintiff cites <u>*Davis v. Passman*</u>, 442 U.S. 228, 241-243 (1979). Plaintiff has standing as a private person and an American injured by the state's taking of his private property for public use

---

[1] The Supreme Court has relied on the "ends of justice" and "liberal interpretation" clauses to strike down attempts by lower courts to improperly restrict RICO's broad reach. *See also*, *Butchers Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986);

[2] As of present, to the best of your Plaintiff's understanding and belief, cases seeking to apply <u>*Ex parte Young*</u> may be brought in several different ways. First, suits may be brought directly under a federal statute containing an explicit or implicit private cause of action. Second, suits may be brought under 42 U.S.C. § 1983, which creates a federal cause of action for violation of "rights" secured by the federal laws and the Constitution. Third, in some cases such as those involving claims of federal preemption, a suit is simply brought under the federal question jurisdiction of the federal courts.

without just compensation. Under Title IV D of the Social Security Act, Plaintiff's property was condemned under a state created legality, issued absent any affirmative showing of parental abandonment and neglect, [ECF #120, ¶¶ 34-46]. Plaintiff's property was taken and monetized through 42 U.S.C. §658a, producing payment to finance the states' operations for the benefit of public use under Congress' intent when it enacted the Welfare Reform Act of 1966, 42 U.S.C. §602 and the Social Security Title IV programs.

Quasi-Judicial Immunity Should Not Apply to CITY AND COUNTY OF DENVER.

8. CITY AND COUNTY OF DENVER was aware of the alleged deficiencies and statutory violations when it began to enforce the support order" [*see* ECF #237 at pg. 12 last paragraph; *see also* ECF #120 at ¶¶159-167]. CITY AND COUNTY OF DENVER was specifically notified of alleged deficiencies regarding the foreign support order [*see* ECF #120 at ¶165]. Lara Delka and Monica Jackson are employees of defendant CITY AND COUNTY OF DENVER.[3]

9. Pursuant to *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), your Plaintiff clearly pointed out the statutory violations in controversy with multiple notices and demands for hearing to officers of DENVER DHS-CSS and the CITY AND COUNTY OF DENVER, [ECF #202 at ¶159-167, ATTACHS. #5-#12; ECF #120, ¶¶159-167]. These same officials violated clearly established statutory and constitutional rights of which any reasonable person would have known.

Colorado Statutes are Inadequate and Unable to Provide Remedy as Enacted.

10. The state of Colorado does not recognize the taking of Plaintiff's property under Title IV D of the Social Security Act (42 U.S.C. §§651-669) as an eminent domain action [*see* C.R.S. §38-1-

---

[3] Counsel for defendant CITY AND COUNTY OF DENVER filed an appearance in this case on behalf of Delka and Jackson.

101(2)]. Plaintiff is invoking the federal constitution's definitions of "private property" and "public use" under the Fifth Amendment's "just compensation" clause. The federal questions before this Court are: (i) whether Plaintiff is a "FNCP" [ECF #120, ¶¶34-46; *see also* ECF #47, ATTACH. #9 – AFFIDAVIT; ECF #120, at ¶¶ 76, 134], and (ii) whether just compensation is due Plaintiff for the portion of federal funds received from the monetizing of Plaintiff's property taken under 42 U.S.C. §§651-669. Plaintiff never agreed with the state's taking of his property for public use, nor willingly transferred his property to the state.

<u>Plaintiff Alleges His Property was Unjustly Condemned and Monetize for Public Use.</u>

11. In the SAC, Plaintiff argues the legal fiction that is the state-imposed child support debt is purposed for the state to monetize this debt under Title IV D, 42 U.S.C. §658(a) – Incentive Payments to States to fund welfare operations.[4] [ECF #120, ¶¶ 47-49, 66-70, 106, 110, 112-113].

## Objections and Arguments for Leave to Amend Count #4

<u>42 U.S.C. 666(f) – The Uniform Interstate Family Support Act is Federal Law.</u>

12. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, known as 42 U.S.C. § 666, which mandates states adopt the UIFSA or face loss federal funding for child support enforcement. Plaintiff was denied his statutory and federal rights[5] embodied under Colorado's UIFSA per C.R.S. §§14-5-605, -607 to challenge the foreign Illinois order he claims was obtained by fraud. [*See:* ECF #120, ¶¶80, 81, 158-167]

---

[4] This controversy is in the people's interest, and should not be relegated strictly to the debate between federalism and state's immunities, but elevated to one concerning the American people's liberty interests and rights protected under the federal constitution, and to be free from exploitation by its government.

[5] Within the UIFSA are rights assigned to certain classes of affected individuals; in Colorado, these rights are contained in C.R.S. §14-5-605, and C.R.S. §14-5-607. Plaintiff argues that while these rights are assigned under state law, nonetheless Congress mandated these rights be assigned to the people, to the class of affected individuals; these are "inferred" or "implied" federal rights embodied in state law. The UIFSA represents Congress' intent for

*Wise v. Bravo*, 666 F2. d 1328, 1332 (10th Cir. 1981) and Federal Preemption.

13. Plaintiff alleges that state officials violated his federal rights under the 14th Amendment's "equal protection" clause,[6] and the claim may be restated as a federal preemption action.

*Blessing v. Freestone et al*, (95-1441), 520 U.S. 329 (1997).

14. In *Blessing*, "[to] seek redress through §1983, … a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." [7] Here, Plaintiff identified with particularity the federal right as being the right conferred through 42 U.S.C. §666(f) and embodied in C.R.S. §14-5-607. Congress did not specifically foreclose a remedy under §1983 nor does Colorado's implementation of the UIFSA provide an enforcement mechanism.[8] The record shows that your Plaintiff made multiple attempts to enforce this right to no avail [*see* ECF #202, EXHIBIT D, E, F, G, H, I, J, K, L, M, N, and O]. Plaintiff is the intended beneficiary of this statutory scheme presented by Congress. The state defendants disregarded and/or ignored your Plaintiff's pleadings, treating Plaintiff differently than other similarly situated litigants.[9] Count 4 is a valid §1983 cause of action, and your Plaintiff should be permitted to amend Count 4 to an *Ex Parte Young* claim.

---

the states to enact identical or acceptable statutes establishing certain rights to affected parties, such as your Plaintiff, in satisfaction of receiving federal incentive payments under the Title IV-D programs. Congress, under Title IV-D of the Social Security Act [*see* 42 U.S.C. §§651-669; §654(20) (A) and §666(f)], mandates that states provide specific child support enforcement services to receive federal funding under the Aid to Families with Dependent Children (AFDC) program [*see* 42 U.S.C. §§601-617].

[6] Federal courts have broadly recognized that "[t]he state's power to legislate, adjudicate and administer all aspects of family law, … is subject to scrutiny by the federal judiciary within the reach of the Due Process and/or Equal Protection Clauses of the Fourteenth Amendment." *Wise v. Bravo*, 666 F. 2d 1328, 1332 (10th Cir. 1981).

[7] Citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989).

[8] See *Livadis v. Bradshaw*, 512 U.S. 107, 133 (1994). See also, *Smith v. Robinson*, 468 U.S. 992, 1005, n.9 (1984).

[9] The doctrine of "class-of-one" equal protection applies in this case. *In arguendo*, Colorado's courts and DHS-CSS agencies would otherwise have to routinely and consistently violate C.R.S. §14-5-605, and -607. Plaintiff only has to show, through discovery, that Colorado's courts and DHS-CSS agencies do comply with C.R.S. §14-5-605, and -607, and that the treatment of Plaintiff in this instant is an exception rather than the norm. The Magistrate Judge denied discovery.

42 U.S.C. § 1983, Amendment XIV § 5 "Enforcement Clause" and 42 U.S.C. § 2000d-7(a)

15. Under § 5 "Enforcement Clause" and 42 U.S.C. § 2000d-7(a), 11th Amendment Immunity is barred and cannot be invoked. Colorado participates in and receives federal funds under Title IV D of the Social Security Act, which confers certain federal rights to the people [*see* C.R.S. §14-5-607, ¶¶ 20; *see also* 42 U.S.C. §654(20) (A) and §666(f); see also 28 U.S.C. §1738B]. This Court has jurisdiction under 42 USC 2000d-7(a)(1).[10]

**Summary Re: Count #1 and Count #4 and State and Denver Defendants**

From the preceding arguments, ¶¶ 6-15, Plaintiff respectfully contends the alleged deficiencies are non-fatal, are curable and that he should be permitted leave to amend the SAC.

**RICO CLAIMS.**

**i) Rooker-Feldman – Plaintiff Respectfully Objects and Disagrees:**

16. The SAC presents independent claims of the nature consider by the Supreme Court in *Exxon*.[11] Counts #2 and #3 are independent claims, albeit claims that deny a legal conclusion that a state court has reached, but this too is addressed in *Exxon*.

An "Inextricably Intertwined" Inquiry is Non-Threshold per *Exxon* Court

17. In *Exxon*, the "inextricably intertwined" test did absolutely none of the work in the case's disposition. The guidance from the Supreme Court from *Exxon* is that federal courts can and should decide at least some *Rooker-Feldman* cases without making any real use of the "inextricably intertwined" concept, permitting review absent rejecting the state judgment. Plaintiff

---

[10] See also, *Frew v. Hawkins*, 540 U.S. 431, 433 (2004); *Dalton v. Little Rock Family Planning Services*, 516 U.S. 474, 476 (1996).

[11] *See* id. (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993), and citing with "accord" signal *Noel v. Hall*, 341 F.3d 1148, 1163-64 (9th Cir. 2003).

is not seeking "rejection" of the state court judgment, only this Court's review and adjudication of defendants' alleged acts of racketeering committed prior to, during and after state proceedings.

*Iqbal v. Patel et al*, 780 F. 3d 728 - Court of Appeals, 7th Circuit, 2015.

18. In *Iqbal*, "plaintiff alleges that the defendants conducted a racketeering enterprise that predated the state court's judgments. Thus, the plaintiff cannot have those judgments annulled but can contend that he was injured, out of court, by being "set up" by Patel and Johnson so that they could take over his business and reap the anticipated profits. Because Iqbal seeks damages for activity that (he alleges) predates the state litigation and caused injury independently of it, the Rooker–Feldman doctrine does not block this suit, which was reinstated."[12]

19. In *Iqbal*, the 7th Circuit relied on another case drawn from *Exxon*; that case is *Johnson v. Pushpin Holdings, LLC*, which held that: "The [*Rooker-Feldman* doctrine] does not bar a federal suit that seeks damages for a fraud that resulted in a judgment adverse to the plaintiff. Such a suit does not seek to disturb the judgment of the state court, but to obtain damages for the unlawful conduct that misled the court into issuing the judgment. It's true that the plaintiff [*Iqbal*] is also asking that the default judgment be vacated, and that is relief that would violate the *Rooker-Feldman* rule; but that claim can be rejected without affecting the damages claim." [13] Also, the 7th Circuit Court of Appeals in *Iqbal* held that under *Exxon*, the *Rooker-Feldman* doctrine asks what injury the plaintiff asks the federal court to redress, not whether the injury is "intertwined" with something else.[14] Several of Plaintiff's RICO claims occurred in the jurisdiction of the 7th Circuit.

---

[12] "Rooker-Feldman Doctrine Does Not Prevent Civil RICO Fraud Lawsuit", David J. Stander, Stander Law RICO Report, April 9, 2015.
[13] *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014).
[14] See *Exxon*, 544 U.S. at 291; see also *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 734 (7th Cir. 2014).

Defendants' Schemes to Defraud Predated the State Court's Judgments.

20. In Counts #2 and #3, Plaintiff alleges defendants conducted a racketeering enterprise predating the state court's judgments. Each RICO defendants' involvement predates their involvement in the state court proceedings [see ECF #120, ¶¶ 50-51; see also ECF #202, at ¶ 96 and EXHIBIT B; for defendant Spiegle, see ECF #202, at ¶¶ 50-53]. The Enterprise provided the forum wherein some of the racketeering acts were committed in aid to defraud your Plaintiff. In ECF #202, EXHIBIT B[15] and EXHIBIT C[16] further support Plaintiff's allegation of an ongoing conspiracy predating the state court proceedings in Illinois. The evidence of collusion and conspiracy provided by these exhibits overwhelmingly support the relevance and applicability of *Iqbal v. Patel et al* [17] to this instant case. Plaintiff contends he was injured out of court by being "set up" prior to any court orders or proceedings by defendants Rebecca, Ridings, KRV PC, R. Murray, D. Murray, Jensen and Spiegle, acting in cahoots to purposefully: (i) cause Plaintiff financial harm and (ii) to damage and cut-off Plaintiff's parental rights through parentectomy.[18] Defendants' Association-in-Fact was formed as early as June 2010, if not earlier [ECF #120, ¶ 51; ECF #9, ¶ 153; and ECF #202, EXHIBIT B at ¶ 96]. Defendants Association-in-Fact absconded with your Plaintiff's child from Illinois to Colorado on or around May 26, 2011, leaving Plaintiff no options but to litigate in the state courts to preserve his parental rights [ECF #120, ¶ 50].

---

[15] A search of Exhibit B, defendant Rebecca's AT&T cell phone record, for calls with defendants KRV PC and Ridings ('18154448700') predating the state court proceedings which started in June 2011 shows 3 calls between June 10 and July 14, 2010 as items #84, 296, and 314; and 9 calls between May 14 and May 27, 2011, ahead of the commencement of state court proceedings, as items #1837, 1853, 1855, 1865, 1877, 1891, 1969, 1982, 2031 and 2034 of the usage record. The same may be done for the other defendants, R.M. Murray and D. Murray, and Jensen comprising the initial Association-in-Fact racketeering enterprise.

[16] See EXHIBIT C pg. 145 at lines 5-24; pg. 146 at lines 1-2; pg. 151 at lines 9-24; and pg. 152 at lines 1-13.

[17] *Iqbal v. Patel et al*, 780 F. 3d 728 - Court of Appeals, 7th Circuit, 2015.

[18] Parentectomy is the removal, erasure, or severe diminution of a caring parent in a child's life, following separation or divorce. A prime example of parentectomy is when one parent moves away from the other fit and loving parent.

Plaintiff's Injuries Under Claim #2 Are Not Caused by the State Courts' Judgments.

21. Only the injuries from property (wage) garnishments due to the contested state courts' child support order may be attributed to the state court judgments; these are not included in Claim #2.

Where Pecuniary Interests Exist, State Tribunals (Courts) are Not Impartial Forums.

22. Plaintiff disagrees with the Magistrate Judge's view that the state courts are impartial and were the actual victims of Defendants' Association-in-Fact RICO enterprise. The Denver District Court and the 19th Judicial Circuit Court of Lake County, Illinois have pecuniary interests as stated above in ¶¶ 11. Members of Congress, state legislators, the federal Dept. of Justice and Dept. of Health and Human Services' Office of Child Support Enforcement, have long held that state courts routinely violate due process and the constitutional rights of parents in creating and enforcing child support obligations. [*See* ECF #40, ATTACH. #6, #9, #11, #12, and #13; ECF #47, ATTACH. #3, #4, #5, #6 and #7]. In the interest of justice, *if* what is required to address the "proximate cause" element of your Plaintiff's RICO claim is to name those individuals in the 19th Judicial Circuit Court of Lake County, Illinois, and the Denver District Court as defendants in a racketeering enterprise, then your plaintiff should be granted leave to amend the SAC to reflect this.

23. Plaintiff's injuries and damages arise from the actions directly caused by defendants' schemes to defraud [*see* ECF #120, ¶ 149; *see also* ECF #163 and ECF #169 & #170]. Specifically,

    (i)    the Illinois state court <u>awarded Plaintiff</u> the real property at 375 West Erie Street, Chicago, Illinois, but this property ended up being foreclosed upon, and its rental income lost, due to a combination of:
        (a) defendants' refusal to assign title of the property via a warranty deed from the REBECCA MURRAY TRUST to your Plaintiff [*see* ECF #163 "*Motion to*

     *Supplement*" at ATTACHMENT 1 (pending refiling per ECF #169 and ECF #170)]; and

  (b) the tortuous interference by defendants Ridings and KRV PC into Plaintiff's business relations and Plaintiff's efforts to secure regular employment [*see* ECF #120, ¶ 148 at (i) re: R. Glaser/IDEX Corp. and others in Plaintiff's professional network during Plaintiff's job search for W2-type employment];

(ii) the loss of retirement savings and other assets from having to expend these assets to finance the litigation to defend against defendants' Association-in-Fact's frivolous and vexatious campaign of parentectomy in the Enterprise's forum courts [*see* <u>National Organization for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 255-58 (1994) – RICO enterprises or acts need not be economically motivated]

<u>Plaintiff Does Not Seek the Federal Court's Rejection of State Courts' Judgments</u>

24. Defendants' simply cannot cite from the SAC where your Plaintiff is seeking this federal court to set aside, vacate or reject the state courts' judgment. The *Exxon* court concluded that a controversy may be "inextricably intertwined" but it would require both "review <u>and</u> rejection" of the state proceedings for *Rooker-Feldman* to apply.

**ii)  Failure to State a Claim – Plaintiff Disagrees, Objects and States the Following:**

<u>Alleged Injuries are Caused by the Purported RICO Violations; Supplementation Denied.</u>

25. On July 14, 2017 your Plaintiff filed a *Motion to Supplement* [*see* ECF #163], as new facts, acts and omissions became available since the filing of the SAC. That same day, the Magistrate Judge denied this Motion without prejudice [*see* ECF #169]. These new facts, acts and omissions your Plaintiff sought to add to the SAC pertain directly to key elements of your Plaintiff's RICO claims as they further reinforce Count #2 by: (a) showing injuries are directly and proximately caused by the cumulative RICO acts, and (b) supporting both pattern and continuity; refer also to ¶ 21 and ¶ 23 above. In the interest of justice your Plaintiff should have been granted an opportunity to supplement the SAC, and now be granted leave to amend and supplement the SAC.

Page 11 of 15

Proximate Cause was Addressed – Defendant Denver District Court is Part of the Enterprise

26. Your Plaintiff disagrees with the Magistrate Judge's findings that "the Denver District Court is not alleged to be part of the Enterprise" [*see* ECF #237 at pg. 18, footnote [8]]; in the SAC, Denver District Court is among all domestic relations courts defined as the Enterprise, and whose operations were integral in the actions of defendants' Association-in-Fact. [ECF #120, ¶¶95-99]

27. If the only necessary detail to satisfy RICO's proximate cause requirement is for defendant Denver District Court, or individuals operating on behalf of the Denver District Court, to be identified as part of Defendants' Association-in-Fact racketeering enterprise, this is non-fatal, and Plaintiff should be allowed to cure this with leave to amend the SAC accordingly.[19]

28. In <u>Holmes v. Securities Investor Protection Corp</u>., the Court held that RICO's proximate cause analysis presented a legal, not factual, issue.[20] The chain of causation addressed in the Magistrate Judge's opinion herein has but a single *dependent and causal* factor – the "kickback scheme" alleged to corruptly influence the court's ruling [*see* ECF #120, at ¶¶ 111-114]. In *arguendo*, absolute judicial immunity on the bench[21] grants broad and unchecked judicial powers to aid and abet in criminal acts that are violative of the law if any judge, or [the state] for whom the judge serves, has a pecuniary interest in the outcome of the ruling[22]. Your Plaintiff is also

---

[19] Your Plaintiff already alleges a conflict of interest exists in the Denver District Court in the form of a pecuniary interest due to federal Title IV-D incentives [ECF #120, ¶47-49, 111-113] and a "kickback" scheme was employed.
[20] *Holmes v. Securities Investor Protection Corp*., 503 U.S. 258 (1992) at 268. Also, as in <u>Iqbal v. Patel</u>, Defendants' racketeering activities predate state court proceedings [see ECF #120 at ¶ 50-52; see also ECF #202 at EXHIBIT B, discussed at ¶ 96]; incorporated into the Enterprise's otherwise legitimate operations [*see* ECF #120 at ¶¶ 95-99, 101-114, 115-124, 133-134, 135-136, 137, 149]; and continued afterwards apart from the Enterprise [*see* ECF #163, ATTACH. #1 at ¶¶ 33-41, 69].
[21] In this instant case, the Magistrate Judge warned Plaintiff about pursuing legal actions against judge defendants as he would apply the doctrine of "absolute judicial immunity."
[22] See "Operation Greylord", *United States v. Maloney*, 71 F. 3d 645 (CA7 1995), cert. denied, 519 U. S. ___ (1996); see generally J. Tuohy & R. Warden, Greylord: Justice, Chicago Style (1989); and see also, Mark Ciavarella and Michael Conahan, re: "Kids for Cash", *United States v. Conahan* (3:09-cr-00028)

denied due process as he has been denied access to an impartial tribunal. Plaintiff has alleged and argued that a pecuniary interest already exists with the states, its courts and states' DHS-CSS agencies under Title IV D; and the monetization of the child support orders the state courts and DHS-CSS agencies produced to indenture and enslave your Plaintiff and others to monetize private property for public use [*see* ECF #120, ¶¶ 47-49, 64, 68-70, and 113]. The facts and allegations of a conflict of interest within the state and its courts were plead in the SAC under Count 1.

Closed-ended Continuity Exists and was Plead in the SAC.

29. As to the Magistrate Judge's expectations for pleading "closed-ended" and "open-ended" continuity [ECF #237 at pg. 19], Plaintiff argues that the RICO predicate acts alleged in the SAC, together with those contained in the July 14, 2017 *Motion to Supplement* [ECF #163], meet the "closed-ended" time duration element as these acts were committed over the course of six-years.

30. Plaintiff identified not one but two (2) artifices to defraud and injure, which are: (a) to cause financial distress from the depletion and transfer of Plaintiff's financial resources through litigation and fraud, and (b) to debilitate your targeted victim by exploiting kick-backs, pecuniary interests statutory arbitrage, and extortion to secure for defendants a favorable outcome [*see* ECF #120, ¶¶102-114]. Your Plaintiff argues that "[the] potential to extend to other persons or entities" was indeed stated in the SAC, [ECF #120 at ¶¶47-49, ¶¶68-70, and ¶¶111-114]. Plaintiff had indeed alleged the potential exists for the schemes to expand beyond those confined limits of Plaintiff's circumstances to hurt potential victims 'waiting in the wings'. [*see* ECF #120 at pg. 36-37; and ECF #237 at pg. 21 footnote [9]]. Indeed, the potential for exploiting kick-backs using the Title IV-D program incentives by corrupt influences within the Enterprise to other litigant parents is very real and have been identified by neutral and federal sources [*see above* ¶¶ 11, 22 and 28].

Pattern and Continuity Elements were Otherwise Demonstrated.

31. Plaintiff alleged in ECF #163 that defendants continued to perpetrate RICO predicate acts after the 2nd Amended Complaint was filed on June 9, 2017. Plaintiff argues that once defendants' Association-in-Fact's initial objective to secure by fraud a favorable court order, continuity under 'color of law' and the courts' pecuniary interest makes it virtually impossible to expose without a thorough deconstruction of the *artifices to defraud*.[23] In the SAC, Plaintiff alleges the Enterprise is infiltrated by corrupt influences, and the likelihood of ongoing recurrence of the type and nature of criminal predicate acts alleged remains a risk for the People. Continuity is also "open-ended".[24] When Plaintiff alleges that individuals in the Denver District Court and/or 19th Judicial Circuit Court are RICO co-conspirators, "open-ended" continuity is established beyond any doubt.

**iii) Count #3 – 18 U.S.C. §1962(d) Claim**

32. Defendants' Association-in-Fact racketeering enterprise existed predating the state court proceedings, acting in conspiracy to devise multiple RICO predicate acts in support of schemes to defraud your Plaintiff [*see* ECF #120, ¶¶ 50-52]. *In arguendo*, Count #3 is a valid claim.

### Summary re: RICO Claims Count #2 and Count #3

33. The alleged deficiencies in Count #2 and Count #3 are curable, and your Plaintiff should be afforded leave to amend SAC with new facts embodied in his July 14, 2017 *Motion to Supplement*.

---

[23] On July 30th, 2017, your Plaintiff entered a motion for TRO as your Plaintiff believes a civil violation of 18 U.S.C. §1512(d) and 18 U.S.C. §1513(e), (f) occurred and will continue to occur if this Court does not immediately intervene to hear Plaintiff's allegation. These latest alleged RICO predicate acts occurred during these official proceedings, even though the defendants could have acted any time from February 2014 to the present [*see* ECF #131 and ECF #132]. So why now? Your Plaintiff alleges defendants' actions constitute violations of 18 U.S.C. § 1512 and §1513; supplementation to include these latest acts pursuant to Rule 15(d) is a valid request; however, the Magistrate Judge denied Plaintiff's motion, pending survival of motions to dismiss [*see* ECF #169].

[24] For open-ended continuity, the predicate acts alleged must establish a "threat of continued racketeering activity" projecting into the future." – *H.J. Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 239-40 (1989), at 242.

**CONSTITUTIONALITY OF COLORADO REVISED STATUTE § 14-10-124**

34. Your Plaintiff respectfully objects to the finding that this claim is barred by the *Rooker-Feldman* doctrine, and states his challenge of C.R.S. §14-10-124 is strictly a facial challenge.

## **SUMMARY**

35. Plaintiff reserves his right to seek *de novo* review by the district court or for appellate review. Your Plaintiff believes that he is being held by the Court to a much higher standard in these proceedings than the U.S. Supreme Court's statement in *Foman v. Davis*, 371 U.S. 178, 192 (1962), referencing *Conley v. Gibson* – that "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome …"[25]

36. Your Plaintiff asks that this Honorable Court consider his grievances and allegations in the context of the Supreme Court's guidance and those of the 7th Circuit Court of Appeals cited herein, in whose jurisdiction multiple acts of racketeering were committed against your Plaintiff.

37. Your Plaintiff takes this opportunity to also notice the Court of his forthcoming Rule 15(a)(2) Motion to Amend SAC, and Rule 41(a)(1)(A)(i) Notice to Dismiss Count #5 of the SAC.

Respectfully submitted,

s/ Gilbert T. Tso_____
*Gilbert T. Tso*
4255 Kittredge St. # 922
Denver, CO 80239-5715
Telephone: 312-339-1968
Email: gilbert.tso@gmail.com
*Pro Se Plaintiff, Party of Record*

---

[25] See also, *Boag v. MacDougall*, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir. 1988) (quoting *Huges v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within *Plaintiff's AMENDED WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATIONS* upon the Clerk of the Court, and upon all parties herein by depositing copies of same via CM/ECF, this 17th day of November 2017, addressed as follows:

**By CM/ECF:**

CLERK OF THE U.S. DISTRICT COURT for the DISTRICT OF COLORADO
Alfred A. Arraj United States Courthouse, Room A105
901 19th Street, Denver, CO 80294-3589
(303) 844-3433

**By CM/ECF:**

Allison R. Ailer, Ass't. Att'y General
State of Colorado
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
E-Mail:  allison.ailer@coag.gov
*Counsel of Record

Richard M. Murray, Esq.
Polsinelli P.C. - Denver
1401 Lawrence Street, Ste. 2300
Denver, CO 80202
E-Mail:  rmurray@polsinelli.com
          rwarren@polsinelli.com
*Counsel of Record

Robert A. Wolf, Esq.
City and County of Denver
1200 Federal Blvd., 4th Floor
Denver, CO 80204
E-Mail:  robert.wolf@denvergov.org
*Counsel of Record

Kevin S. Taylor, Esq.
Margaret L. Boehmer
Taylor Anderson LLP
1670 Broadway, Suite 900
Denver, CO 80202
E-Mail:  ktaylor@talawfirm.com
          mboehmer@talawfirm.com
*Counsel of Record

Tory D. Riter, Esq.
Kelly L. Kafer, Esq.
Baldwin Morgan & Rider, P.C.
1512 Larimer Street, Ste. 450
Denver, CO 80202
E-Mail:  tory@bmrpc.com
          kelly@bmrpc.com
*Counsels of Record

s/ Gilbert T. Tso_____
*Gilbert T. Tso*
4255 Kittredge St. # 922
Denver, CO  80239-5715
Telephone: 312-339-1968
Email: gilbert.tso@gmail.com
*Pro Se Plaintiff, Party of Record*