**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-2480-WJM-CBS

GILBERT T. TSO, individually, and as the parent and on behalf of M.X.T.,

        Plaintiff,

v.

REBECCA MURRAY, individually;
TANYA AKINS, individually and official capacities;
SHERR PUTTMAN AKINS LAMB PC, a law firm;
JEANNIE RIDINGS, individually and official capacities;
KILILIS RIDINGS & VANAU PC, a law firm;
RUSSELL M. MURRAY, individually;
DENA MURRAY, individually;
JOANNE JENSEN, individually;
DAVID P. BRODSKY, individually and official capacities;
ELIZABETH A. STARRS, individually and official capacities;
CHARLES D. JOHNSON, individually and official capacities;
ROSS B. H. BUCHANAN, individually and official capacities;
DAVID H. GOLDBERG, individually and official capacities;
THE COUNTY OF LAKE, ILLINOIS, and THE STATE OF ILLINOIS;
MITCH MCKEE, official capacity;
MONICA JACKSON, individually and official capacities;
LARA DELKA, individually and official capacities; and
THE CITY & COUNTY OF DENVER, COLORADO, & THE STATE OF COLORADO,

        Defendants.

_____

**ORDER ADOPTING RECOMMENDATIONS OF MAGISTRATE JUDGE GRANTING
DEFENDANTS' MOTIONS TO DISMISS AND DISMISSING PLAINTIFF'S CLAIMS**
_____

        This matter is before the Court on United States Magistrate Judge Craig B.

Shaffer's Report and Recommendation dated September 26, 2017. (ECF No. 237 ("the

Recommendation").) Judge Shaffer recommends granting six motions to dismiss; filed

respectively by: (1) Defendants Rebecca Murray, Russell M. Murray, Dena Murray, and

Joanne Jensen (Collectively, "Murray Defendants") (ECF No. 135); (2) the City and County of Denver and the Denver Department of Human Services (collectively, the "Denver Defendants") (ECF No. 137) ; (3) the Denver District Court and the Colorado Department of Human Services (collectively, the "Colorado Defendants") (ECF No. 139); (4) Tanya Akins and Sherman Puttman Akins Lamb, P.C. (collectively, the "SPAL Defendants") (ECF No. 141); (5) Jeannie Ridings and Kililis Ridings & Vonau P.C. (collectively, the "Illinois Defendants") (ECF No. 142); and (6) Richard Spiegle, Psy.D ("Dr. Spiegle") (collectively, "Defendants' Motions").

Plaintiff Gregory T. Tso ("Plaintiff") filed a timely Objection to the Recommendation (ECF No. 259 ("the Objection").)  The Murray Defendants (ECF No. 246), the Denver Defendants (ECF No. 249), the Colorado Defendants (ECF No. 262), the SPAL Defendants (ECF No. 252), the Illinois Defendants (ECF No. 252), and Dr. Spiegle (ECF No. 267) filed responses to the Objection (collectively, Defendants' Responses).  For the reasons set forth below, Plaintiff's Objection is overruled, Judge Shaffer's Recommendation is adopted, Defendants' Motions are granted, and Plaintiff's claims are dismissed.

## I. STANDARD OF REVIEW

### A.    Rule 72(b)

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to."  An objection to a recommendation is properly made if it is both timely and

specific. *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* In the absence of a timely and specific objection, "the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record.").

Because Plaintiff is proceeding *pro se*, the Court must liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). The Court, however, cannot act as an advocate for Plaintiff, who must still comply with the fundamental requirements of the Federal Rules of Civil Procedure. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## B.    Rule 12(b)(1)

A motion under Rule 12(b)(1) is a request upon the court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of establishing that the court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Dismissal of a complaint under Fed. R. Civ. P. 12(b)(1)

3

is proper when the Court lacks subject matter jurisdiction over a claim for relief.  *See SBM Site Services, LLC v. Garrett*, 2012 WL 628619, *1 (D. Colo. Feb. 27, 2012).

When a court's subject matter jurisdiction is challenged, the court may review materials outside the pleadings without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment.  *Davis ex rel. Davis v. U.S.*, 342 F.3d 1282, 1296 (10th Cir. 2003) (stating that "when a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" (*quoting Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995))); *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).

Only where the jurisdictional question is intertwined with the merits (not present here) is conversion of a Rule 12(b)(1) motion into a motion for summary judgment under Rule 56 appropriate.  *Holt*, 46 F.3d at 1003.

## C.    Rule 12(b)(2)

The purpose of a motion to dismiss pursuant to Rule 12(b)(2) is to test whether the Court has personal jurisdiction over the named parties.  The plaintiff bears the burden of establishing personal jurisdiction over a defendant.  *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984).  As is true here, when the court does not hold an evidentiary hearing before ruling on jurisdiction, "the plaintiff need only make a *prima facie* showing" of personal jurisdiction to defeat a motion to dismiss.  *Id*. (citing *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983)).  A plaintiff "may make this *prima facie* showing by

demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). To defeat the plaintiff's *prima facie* case, a defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

To obtain personal jurisdiction over a nonresident defendant, the plaintiff "must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)). In Colorado, the state's long arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (referring to Colo. Rev. Stat. § 13-1-124). Thus, the Court need only address the constitutional question of whether the exercise of personal jurisdiction over the defendants comports with due process. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (the state jurisdictional analysis in Colorado "effectively collapses into the second, constitutional, analysis").

The Court will accept the well-pled factual allegations of the complaint as true to determine whether Plaintiffs have made a *prima facie* showing that personal jurisdiction exists. *Id.* Any factual conflicts arising from affidavits or other submitted materials are resolved in the plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.

1995).

**D.    Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

No parties object to the recitation of facts set forth by Judge Shaffer in the September 26, 2017 Recommendation.  (ECF No. 237 at 2–3.)  Accordingly, the Court adopts and incorporates those facts as if set forth herein.  (*See* ECF No. 237 at 2–3.)

Briefly, Plaintiff, proceeding *pro se*, initiated this case after the dissolution of his marriage to Ms. Murray in November 2012.  (ECF No. 237 at 2.)  The domestic

proceedings in an Illinois court granted residential custody of the couple's child to Ms. Murray and also permitted her to move to Colorado. (*Id.*) The Illinois court also entered a "duty of support" against Plaintiff, but deferred establishment of a child support order. (*Id.*)

By June 2013, Plaintiff, Ms. Murray, and their child had all moved to Colorado. (*Id.*) However, the Illinois court retained jurisdiction over the child support issue and ultimately entered a support order that included arrearages of approximately $17,500 owed by Plaintiff. (*Id.*) The Illinois Appellate Court affirmed the Illinois trial court's exercise of jurisdiction over the child support order. (*Id.*) In 2015, the Denver District Court granted Ms. Murray's motion for registration and enforcement of the Illinois support order. (*Id.*)

Plaintiff filed his Second Amended Complaint ("SAC") (ECF No. 120) on June 9, 2017. Plaintiff's SAC alleges that the Colorado and Denver Defendants violated his Fifth and Fourteenth Amendment rights (respectively, "Claim One" and "Claim Four"). (ECF No. 237 at 3.) Plaintiff also contends that Colorado Revised Statute § 14-10-124 is unconstitutional on its face ("Claim Five"). (*Id.*) Additionally, Plaintiff asserts two civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against all of the Defendants (Claim Two and Claim Three). (*Id.*) Plaintiff's RICO claims are based on his contention that the Murray Defendants, the Illinois Defendants, the SPAL Defendants, and Dr. Spiegel formed an enterprise with the goal of obtaining court orders that are financially onerous to Plaintiff. (*Id.*)

Defendants filed their Motions to Dismiss on the basis that (1) the SAC does not

comply with the Federal Rule of Civil Procedure 8; (2) this court lacks jurisdiction under

the *Rooker-Feldman* doctrine; (3) Plaintiff lacks standing to bring his RICO claims; (4)

Plaintiff has failed to state any claim for relief; (5) the court lacks personal jurisdiction

over the Illinois Defendants; (6) Plaintiff's claims are barred by the Eleventh

Amendment and the statute of limitations; and (7) some of the Defendants are

protected by quasi-judicial immunity.  (*Id.*)  Judge Shaffer reviewed these motions,

along with Plaintiff's Response (ECF No. 202) and Defendants' Replies (ECF Nos. 209,

213, 216, 222), and issued his Recommendation granting the Motions to Dismiss and

dismissing the action as to all Defendants and all claims.  (*See* ECF No. 237.)

### III. MOTIONS TO DISMISS

The Court's analysis follows the same structure as Judge Shaffer's

Recommendation and Plaintiff's Objection.  Thus, the Court first considers the

Defendants who will be dismissed for lack of personal jurisdiction and then turns to

remaining RICO claim and constitutional claim.

### A.    Illinois Defendants

The Illinois Defendants include attorney Jeannie Ridings and her firm, Kililis

Ridings & Vonau, P.C., who represented Ms. Murray in the Illinois court proceedings.

Plaintiff claims that the Illinois Defendants, along with the Murray Defendants, "sought

to eliminate Plaintiff's parental rights through a vigorous campaign of defamation,

slander, false allegations, abuses of process, malicious prosecution and vexatious

litigation that would shock the conscience."  (ECF No. 120 at 19.)  The Colorado court

dismissed Plaintiff's claims against the Illinois Defendants for lack of personal

jurisdiction, because they were not residents of Colorado, and had no involvement in any proceedings in Colorado and had not purposefully availed themselves of the privilege of conducting business in Colorado. (ECF 142-6 at 3–4, 5.) Plaintiff did not appeal this determination. (ECF No. 142-7.) In their Motion to Dismiss, Illinois Defendants now contend, based on this state court order, that Plaintiff is precluded from relitigating this issue under the doctrine of collateral estoppel, or issue preclusion. (ECF No. 142 at 6–8.)

Judge Shaffer recommends that Plaintiff's claims against the Illinois Defendants should be dismissed for a lack of personal jurisdiction. (ECF No. 237 at 7–8.) His Recommendation relies on issue preclusion, which bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim. (*Id.*; *Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004.)

The Court agrees with Judge Shaffer's Recommendation on this point. Issue preclusion applies when "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Park Lake*, 378 F.3d at 1136. In the case of dismissals for lack of personal jurisdiction, issue preclusion prevents relitigation of the issues determined in ruling on the jurisdiction question. *See Id.*; *see also Drexler v. Kozloff*, 210 F.3d 389 2000 WL 3766088, at *4–5 (10th Cir. 2000) (Table). Judge Shaffer points out that "the record shows that the Colorado state court decided the

9

issue of whether [Plaintiff] had established a *prima facie* case of specific jurisdiction under Colorado's long-arm statute and the Fourteenth Amendment due process provisions. In doing so, the [Colorado] court specifically considered [Plaintiff's] allegations regarding the Illinois Defendants' representation of Ms. Murray in the Illinois domestic proceedings." (ECF No. 237 at 8; ECF No. 142-6.)  Plaintiff's present claims arise out of the same domestic proceedings.  (*See* ECF No. 120.)  Plaintiff and the Illinois Defendants had a full and fair opportunity to litigate this issue and it was fully and finally adjudicated by the Colorado district court.  Thus, the Court concludes that the question of whether the Illinois Defendants are subject to personal jurisdiction in Colorado has been decided and may not be relitigated.

Alternatively, in his SAC, Plaintiff attempts to invoke 18 U.S.C. § 1965(b), which provides for nationwide jurisdictional reach for claims brought pursuant to RICO.  (ECF No. 120 ¶¶ 11, 16–17).  Judge Shaffer recommends that Plaintiff's claim under 18 U.S.C. § 1965(b) be dismissed for two reasons.  (ECF No. 237 at 8.)  First, Plaintiff "has not pointed to any facts demonstrating that the ends of justice require nationwide service of process in this case." (*Id.*)  And second, Plaintiff "has not stated a viable RICO claim in this matter and thus, the court need not address whether nationwide jurisdiction is proper." (*Id.*)

In his Objection, Plaintiff does not dispute that the issue of personal jurisdiction is barred by issue preclusion.  Rather, his objection is based on his "allege[d] violations of 18 U.S.C. § 1962(c) and (d), for which [Illinois Defendants] were acting as agents of the criminal racketeering enterprise, integral and instrumental in the successful execution of defendants' racketeering schemes.  This alone should be sufficient to satisfy the 'ends

of justice' criteria to invoke Fed.R.Civ.P. 4(k) and 18 U.S.C. § 1965(b) and (d)." (ECF No. 259 at 3.)

The Court is not persuaded by Plaintiff's argument and agrees with Judge Shaffer's findings. Pursuant to subsection (b), when a RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be effected nationwide on other defendants *if* required by the ends of justice. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006) (internal italics added). But, the Tenth Circuit has held that "general assertions fall short of satisfying the ends-of-justice standard." *Hart v. Salois*, 605 Fed. App'x 694, 699 (10th Cir. 2015). Plaintiff offers no legal authority to support his conclusory contention that his allegation of Defendants' involvement in the racketeering enterprise is sufficient to satisfy the ends of justice standard. (*See* ECF No. 259.) Moreover, the Court determines below that Plaintiff has failed to state a viable RICO claim, so nationwide jurisdiction under § 1965(b) is not available.

Thus, because the Colorado district court has already held that the Illinois Defendants are not subject to personal jurisdiction in Colorado, Plaintiff is barred from relitigating that issue under the doctrine of issue preclusion. Additionally, Plaintiff's alternative arguments pursuant to 18 U.S.C. § 1965(b) are also unavailing because Plaintiff has failed to show that the ends of justice require nationwide service of process in this case, in addition to the fact that Plaintiff has also failed to state a viable RICO claim. Accordingly, the Court adopts Judge Shaffer's Recommendation and dismisses the Illinois Defendants for lack of personal jurisdiction.

**B.      Colorado and Denver Defendants**

Plaintiff raises two claims against the Colorado and Denver Defendants.  First, Plaintiff alleges that the Denver Defendants and the Colorado Defendants are garnishing his wages and other financial accounts as a result of the child support registration and enforcement orders in violation of Fifth Amendment takings clause. (ECF No. 120 at 25–28.)  Second, Plaintiff contends that these Defendants have also violated his Fourteenth Amendment right to Equal Protection.  (ECF No. 120 at 59–62.)

1.      Fifth Amendment Claim

Plaintiff brings his Fifth Amendment takings claim pursuant to 42 U.S.C. § 1983 and seeks monetary damages in recompense for the alleged violation.[1]  (ECF No. 120 at 66.)  Judge Shaffer's Recommendation states that "this claim is barred as against the Colorado Defendants and the Denver Department of Human Services" pursuant to the arm-of-the-state doctrine.  (ECF No. 237 at 9.)

"The Eleventh Amendment precludes anyone from suing an arm of the state or asserting a damage claim against state officers in their official capacities."  *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017).  "The arm-of-the-state doctrine bestows immunity on entities created by state governments that operate as alter egos or instrumentalities of the states."  *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574–75 (10th Cir. 1996).

The Denver District Court and the Colorado Department of Human Services

---

[1] The Court acknowledges Plaintiff's unspecified request for equitable relief.  (ECF 120 ¶¶ 86, 180(C).)  However, the Court notes that a § 1983 Plaintiff may only seek money damages from individual capacity defendants, or injunction from official-capacity defendants, *see, e.g. Brown v. Buhman*, 822 F.3d 1151, 1162 n. 10 (10th Cir. 2016).

were created by the Colorado state government and are therefore arms of the state. *See* 13 Charles Alan Wright et al., *Federal Practice and Procedure* § 3524.2, at 324–25 (3d ed. 2008) ("As a general matter, state courts are considered arms of the state."); *Coopersmith v. Supreme Ct., St. Of Colo.*, 465 F.2d 993, 994 (10th Cir. 1972) ("Colorado Supreme Court, Colorado Court of Appeals, and Grand County, Colorado District Court "are not 'persons'" as contemplated in 42 U.S.C. §§ 1983, 1985, and 1986); *Ruiz v. McDonnell*, 299 F.3d 1173 (10th Cir. 2002) ("the CDHS qualifies as an 'arm' of the state of Colorado.").  The Denver Department of Human Services is also an arm of the state and is thus granted immunity under the Eleventh Amendment.  *T.D. v. Patton*, 149 F.Supp.3d 1297 (D. Colo. 2016) ("Ultimately, the DDHS' inability to raise any revenues on its own initiative, and the state's significant control over even those moneys that the DDHS does receive, demonstrates the DDHS' reliance upon, and its status as an arm of, the state.").

Plaintiff does not specifically object to Judge Shaffer's application of the arm-of-the-state doctrine to the Denver District Court, the Colorado Department of Human Services, and the Denver Department of Human Services.  (*See* ECF No. 259.)  Where Plaintiff does not object to the Magistrate Judge's findings, the Court reviews those findings under a "clearly erroneous" standard of review.  The Court is persuaded by Judge Shaffer's reasoning and finds no clear error in this recommendation and, thus, adopts it.  The Denver District Court, Colorado Department of Human Services, and the Denver Department of Human Services are dismissed as Defendants on the basis of

Eleventh Amendment Immunity.[2]

Judge Shaffer's Recommendation finds that Plaintiff's claim against the City and County of Denver are barred under the doctrine of quasi-judicial economy. (ECF No. 237 at 11.) Plaintiff objects to this recommendation, stating that he "clearly pointed out the statutory violations in controversy with multiple notices and demands for hearing to officers of Denver DHS-CSS and the City and County of Denver. These same officials violated clearly established statutory and constitutional rights of which any reasonable person would have known." (ECF No. 259 at 4 (internal citations omitted).) Plaintiff relies on *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) to support his contention.

The Court is not persuaded by Plaintiff's argument. Plaintiff is correct in that *Harlow* stands for the proposition that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. However, *Harlow* is inapposite to the present facts, because *Harlow* was addressing qualified immunity, not quasi-judicial immunity.

Under the relevant doctrine of quasi-judicial immunity, "[a]n officer charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." *Valdez v. City and Cnty. of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989). "[F]or the Defendant state official to be entitled to quasi-judicial immunity, the judge issuing the order must be

---

[2] Because the Court lacks jurisdiction over the claim, this is a dismissal without prejudice. *Amin v. Voigtsberger*, 560 F.App'x 780, 783 (10th Cir. 2014.)

immune from liability in his or her own right, the officials executing the order must act within the scope of their own jurisdiction, and the officials must only act as prescribed by the order in question." *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009). Thus, the Tenth Circuit holds that "a state official is not absolutely immune from damages arising from the execution of an order issued by a judge acting in the 'clear absence of all jurisdiction.'" *Id.* However, this is still a high bar because "a judge does not act in the clear absence of all jurisdiction even if the action he took was in error, was done maliciously, or was in excess of his authority." *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). Indeed, "a judge is immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of 'grave procedural errors.'" (*Id.*)

Here, the City and County of Denver was enforcing a facially valid support order which was registered and enforced by the Denver District Court. (ECF No. 237 at 2.) Denver officials were not "required to act as pseudo-appellate courts scrutinizing the orders "they were charged to enforce, even if Plaintiff protested their validity. *Moss*, 559 F.3d at 1165 (internal quotation marks omitted). Thus, the City and County of Denver is entitled to quasi-judicial immunity.[3] Therefore, the Court overrules Plaintiff's objection to Judge Shaffer's finding regarding quasi-judicial immunity. Accordingly, the City and County of Denver is dismissed as Defendants.

---

[3] Treating Plaintiff's *pro se* complaint liberally, the Court assumes for present purposes that Plaintiff has sufficiently pled Denver acted in execution of a policy of "widespread custom" sufficient to hold the municipality liable under § 1983. *See e.g. Moss v. Komp*, 559 F.3d 1155, 1169 (10th Cir. 2009). However, Plaintiff still cannot state a constitutional violation because any employee or agent of Denver was entitled to quasi-judicial immunity.

2.      Fourteenth Amendment Claim

Plaintiff claims the Colorado and Denver Defendants' application of Uniform Interstate Family Support Act § 605(b)(2) ("UIFSA") and C.R.S. § 14-5-607 violated his Fourteenth Amendment right to Equal Protection.  (ECF No. 120 at 59.)  Plaintiff argues that "the federal monetary incentives doled out to states under 42 U.S.C. §§ 651–669 discriminate and deny equal protections and substantive due process against an entire class of people who are natural parents involved in custody disputes generally designated "non-custodial parent."  (ECF No. 120 at 5.)  "Plaintiff seeks prospective injunctive relief, and compensatory, nominal and punitive damages where allowed against various defendants, including disgorgement is applicable."  (ECF No. 120 at 59.)

Judge Shaffer's Recommendation finds that Plaintiff's "equal protection claim should be dismissed because [Plaintiff] makes no specific factual allegations in support of his claim that these Defendants violated his equal protection rights.  His open-ended allegations provide no suggestion as to what the grounds for an equal protection violation might be."  (ECF No. 237 at 13.)  Moreover, Judge Shaffer points out that Plaintiff "has not alleged an essential element of his equal protection claim: namely, that he was intentionally treated differently than another who was similarly situated."  (ECF No. 237 at 14.)  Additionally, Judge Shaffer explains that Plaintiff "cannot seek redress pursuant to § 1983 for the violations of a state statute or UIFSA."  (*Id.*)  In order to bring a claim under § 1983, "the plaintiff must assert the deprivation of a federal right, not just the violation of a federal law."  (*Id.* (citing *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).)  Here, Judge Shaffer notes, Plaintiff "has not asserted the deprivation of any

16

federal or constitutional right. Indeed, he has not even alleged the violation of a federal law." (ECF No. 237 at 14.)  Finally Judge Shaffer states that the part of Plaintiff's Equal Protection claim which arises from C.R.S. § 14-5-607 also fails to state a viable claim against Defendants because "'a state's violation of its own laws does not create a claim under § 1983.'" (*Id.*; citing *Rector v. City and Cty. Of Denver*, 348 F.3d 935, 947 (10th Cir. 2003).

Plaintiff objects to Judge Shaffer's Recommendation, claiming that he "identified with particularity the federal right as being the right conferred through 42 U.S.C. § 666(f) and embodied in C.R.S. § 14-5-607.  Congress did not specifically foreclose a remedy under § 1983 nor does Colorado's implementation of the UIFSA provide an enforcement mechanism.  The record shows that your Plaintiff made multiple attempts to enforce this right to no avail." (ECF No. 259 at 6.)

The Court does not find Plaintiff's Objection convincing.  In the Tenth Circuit, "'traditional' class-based equal protection jurisprudence generally proceeds in two steps.  First we ask whether the challenged state action intentionally discriminates between groups of person."  *SECSYS, LLC v. Vigil*, 666 F.3d 678 (10th Cir. 2012).

> Intentional discrimination can take several forms.  When a distinction between groups of persons appears on the face of a state law or action, an intent to discriminate is presumed and no further examination of legislative purpose is required.  By contrast, when the law under review is generally applicable to all persons, no presumption of intentional discrimination arises; proof is required.  This is so because many laws, perhaps most and often unavoidably, affect some groups of persons differently than others even though they involve no *intentional* discrimination.

*SECSYS*, 666 F.3d at 685 (internal citations omitted).  Here, as Judge Shaffer noted,

Plaintiff fails to allege any facts demonstrating that he has been discriminated against on the basis of a group distinction. Thus, Plaintiff's Equal Protection claim against the Colorado and Denver Defendants fails.

Moreover, in order to seek redress under § 1983, Plaintiff "must assert the violation of a federal *right*, not merely of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 329 (1997) (emphasis in original). Here, Plaintiff failed to assert the violation of a federal right, because his § 1983 claims are based on the UIFSA which is a state statute. *Kester v. State of Kan.*, 2005 WL 1387968 (D. Kan. 2005) ("but the UIFSA is a state statute and § 1983 does not create a cause of action for violation of state law.") Finally, the Court agrees with Judge Shaffer's reasoning regarding Plaintiff's claims arising from C.R.S. § 14-5-607. Namely, this argument fails to state a viable claim against Defendants because "'a state's violation of its own laws does not create a claim under § 1983.'" *Rector v. City and Cty. Of Denver*, 348 F.3d 935, 947 (10th Cir. 2003).

Accordingly, the Court adopts Judge Shaffer's recommendation and the Colorado Defendants and the Denver Defendants are dismissed from the case.

## C.     RICO Claims

Plaintiff alleges that the Murray Defendants, the SPAL Defendants, Dr. Spiegle, and the Illinois Defendants conducted an enterprise aimed at obtaining court orders favoring Ms. Murray through a pattern of illegal activity—including, *inter alia*, wire fraud, mail fraud, and extortion—directed at the courts of Illinois and Colorado. (ECF No. 120 at 28–58.)

In his Recommendation, Judge Shaffer states that "these claims are barred by

the *Rooker–Feldman* doctrine, and—even if they are not—[Plaintiff] has failed to state a claim under RICO."  (ECF No 237 at 15.)  Specifically, Plaintiff "has failed to allege any injury caused by purported RICO violations."  (*Id.* at 17.)  Judge Shaffer further found "that even if he had alleged an injury, [Plaintiff's] allegations do not establish a pattern of racketeering activity."  (*Id.*)

Plaintiff objects, arguing that the *Rooker-Feldman* doctrine should not apply. Plaintiff points to *Exxon Mobil Corp. V. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) and its progeny to claim that "federal courts can and should decide at least some *Rooker-Feldman* cases without making any real use of the "inextricably intertwined" concept, permitting review absent rejecting the state judgment."  (ECF No. 259 at 7.)  Moreover, Plaintiff argues that he is not "seeking this federal court to set aside, vacate or reject the state court's judgment."  (*Id.* at 11.)

The Court is not convinced by this argument.  The *Rooker-Feldman* doctrine "bars any 'action in federal court that alleges an injury 'inextricably intertwined' with a state court decision, such that success in the federal court would require overturning the state court decision.'" *Wideman v. Colorado*, 242 F. App'x 611, 613–14 (10th Cir. 2007) (quoting *Epps v. Creditnet, Inc.*, 320 F.3d 756, 758–59 (7th Cir.2003).).  Plaintiff misconstrues the holding in *Exxon*.  In that case, the Supreme Court specifically stated, "The *Rooker-Feldman* doctrine is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments."  Thus, *Exxon* stands for the proposition that the *Rooker-Feldman*

doctrine specifically applies to fact patterns like the one presented here.

Furthermore, the Court is not persuaded by Plaintiff's claim that he is not seeking reversal of the state court judgment. Plaintiff's RICO claim turns on his allegation that the Illinois and Colorado state court judgments were a direct result of the Defendants' racketeering activity. (ECF No 120 at 28–58.) In order to consider this allegation, the Court will inevitably have to review those state court proceedings to determine if the judgments were reached as a result of Defendants' allegedly illegal schemes. This is precisely the type of collateral review barred by the *Rooker-Feldman* doctrine. *See Farris v. Burton*, 686 F. App'x 590, 592 (10th Cir. 2017) ("In order to evaluate [plaintiff's] claims that defendants' fraud led [to] factual and legal errors in affirming the trial court's decision, a federal court would have to review the appellate state court proceedings to determine if the decision to affirm the trial court's property division was reached as a result of fraud or from a proper assessment of the claims on appeal. Such a review implicates the *Rooker-Feldman* bar because [plaintiff's] claims rest on . . . allegation[s] concerning the state-court proceedings or judgment." (internal quotation marks omitted).) Indeed, the Tenth Circuit has specifically held that "as long as the state-court judgment stands—collateral attacks based on a party corrupting the state judicial process are properly brought only in state court." *Id.* at 593. Thus, the Court agrees that the *Rooker-Feldman* doctrine applies here and Plaintiff's RICO claims are barred.

Plaintiff also objects to Judge Shaffer's finding that Plaintiff failed to show that he was injured in his business or property by reason of a violation of 18 U.S.C. § 1962. Plaintiff claims that he established proximate cause because "[t]he chain of causation

addressed in the Magistrate Judge's opinion herein has but a single *dependent and causal* factor—the "kickback scheme: alleged to corruptly influence the court's ruling." (ECF No. 259 at 13.)  Plaintiff claims that his injury—the unfavorable child support order and its enforcement—was caused by Defendants' illegal activity during the state court proceedings.  Additionally, Plaintiff argues that he has shown a pattern of activity, because "Your Plaintiff argues that 'the potential to extend to other persons or entities' was indeed stated in the SAC. Plaintiff has indeed alleged the potential exists for the schemes to expand beyond those confined limits of Plaintiff's circumstances to hurt potential victims 'waiting in the wings."  (ECF No. 259 at 13.)

The Court concludes that Plaintiff has not sufficiently demonstrated that the alleged violation was the proximate cause of his injury, as required by RICO.  *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992).  Proximate cause for purposes of RICO requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268.  "This result is confirmed by the directness requirement's underlying premises, one of which is the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 452 (2006).  "A direct causal connection is especially warranted where the immediate victims can be expected to vindicate the laws by pursuing their own claims." *Id.*  In *Anza*, the United States Supreme Court found that "a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Id.* at 464.  Here, the Court concludes that the immediate victims

of alleged RICO violations would have been the Illinois and Colorado state courts and

Plaintiff could have received the same child support order and enforcement orders

regardless of whether the alleged RICO conduct occurred.  Thus, because Plaintiff has

failed to allege any injury caused by the RICO activities, the Court adopts Judge

Shaffer's recommendation and these claims are dismissed in their entirety.

Alternatively, even if Plaintiff can demonstrate proximate cause, the Court

concludes that Plaintiff has failed to establish the necessary pattern of racketeering

activity.  "To prove a 'pattern of racketeering activity' a plaintiff or prosecutor must show

both 'relationship' and "'continuity'—that the racketeering predicates are related, and

that they either constitute or threaten long-term criminal activity."  *H.J. Inc. v. Nw. Bell*

*Tel. Co.*, 492 U.S. 229, 230 (1989).  As the Supreme Court explained,

> Relationship and continuity are two distinct requirements,
> though their proof will often overlap. RICO's notion of
> relationship is [that] "criminal conduct forms a pattern if it
> embraces criminal acts that have the same or similar
> purposes, results, participants, victims, or methods of
> commission, or otherwise are interrelated by distinguishing
> characteristics and are not isolated events." 18 U.S.C. §
> 3575(e). . . . Continuity is centrally a temporal concept, and
> may be either closed- or open-ended. A party alleging a
> RICO violation may demonstrate continuity over a closed
> period by proving a series of related predicates extending
> over a substantial period of time. Otherwise, it must be
> shown that the predicates establish a *threat* of long-term
> racketeering activity—for example, because the predicates
> themselves involve a distinct threat of such activity; because
> they are part of the regular way of doing business for an
> ongoing entity such as a criminal association or legitimate
> business; or because they are a regular means of
> conducting or participating in an ongoing RICO enterprise.

*Id*.  Here, while Plaintiff claims that there are potential victims waiting in the wings, he

does not provide any plausible or specific support for this conclusory contention. Thus, after considering the SAC, Judge Shaffer's Recommendation, and Plaintiff's Objection, the Court agrees that Plaintiff is alleging "a single, narrowly focused scheme conducted to accomplish only one discrete goal—to obtain favorable orders in the domestic relations matters and to obtain Plaintiff's financial assets." (ECF No. 237 at 21.) This alleged racketeering conduct was directed solely at Plaintiff, with no potential to expand to harm any other potential victims.

Accordingly, the Court adopts Judge Shaffer's Recommendation and Plaintiff's RICO claims are barred by the *Rooker-Feldman* doctrine and, alternatively, fail to state a viable RICO claim.

### D.      Constitutionality of C.R.S. § 14-10-124

Plaintiff challenges the constitutionality of C.R.S. § 14-10-124. Judge Shaffer found that Plaintiff's claim is "bare, conclusory, and littered with legal conclusions masquerading as factual allegations." (ECF No. 237 at 22.) Moreover, Judge Shaffer found that "this claim is, at its core, an attempt to unwind the proceedings in the state court. Even if the claim had been sufficiently pled, an ultimate finding that the statute is unconstitutional would undermine the state court domestic relations orders regarding parenting time. Thus, this claim is barred by the *Rooker-Feldman* doctrine and should be dismissed." (*Id.* at 23.)

Plaintiff makes a one-sentence objection to Judge Shaffer's Recommendation, claiming, "Your Plaintiff respectfully objects to the finding that this claim is barred by the *Rooker-Feldman* doctrine, and states his challenge of C.R.S. § 14-10-124 is strictly a

facial challenge." (ECF No. 259 at 15.) Plaintiff offers no other comment on this issue.

Plaintiffs has failed to articulate a substantial and principled reason for this Court to conclude that Judge Shaffer's recommendation on this claim is erroneous or without a sound legal basis. Accordingly, this claim is also dismissed.

## IV. MOTION TO SUPPLEMENT

On July 14, 2017, Plaintiff filed a Motion to Supplement his SAC (ECF No. 163 "Motion to Supplement").) Judge Shaffer ruled on Plaintiff's Motion to Supplement that same day, stating, "Motions to Dismiss regarding the Second Amended Complaint have already been filed, and to permit supplementation at this juncture would require additional briefing from Defendant and, in turn, from Plaintiff. Consequently, Plaintiff's Motion is Denied without prejudice pending the outcome of the Motions to Dismiss. Should this case survive the Motions to Dismiss, Plaintiff will be permitted to refile his Motion to Supplement." (ECF No. 169.)

Plaintiff promptly objected to Judge Shaffer's Order, stating "[b]y conditionally restricting the admission of new predicate acts, transactions, facts and evidence when no new claims are introduced, the Magistrate's Order has the effect of prematurely and unjustly settling the matter absent a review of ALL available facts and transactions supporting 18 U.S.C. §§ 1962 (c), (d)'s pattern and continuity requirement within the current operative Complaint." (ECF No. 170 ¶ 5.) Plaintiff contends that he "seeks to include new transactions and facts under existing claims" and maintains that "these new transactions can only eliminate Defendants' Rule 12(b)(6) defenses." (*Id.* ¶ 4,3.)

The Court concludes that allowing Plaintiff to supplement his SAC would be

futile.  Treating Plaintiff's Motion to Supplement as dispositive and entitled to Rule 72(b) *de novo* review, the Court finds that the proposed Supplemental Complaint (ECF No. 163-1) would not cure the defects in the SAC identified above and in the Court's review of Judge Shaffer's Recommendation.  Namely, Plaintiff's claims, even if amended, would still be barred by the *Rooker-Feldman* doctrine and alternatively would still fail to sufficiently plead continuity as a matter of law.  Accordingly, the Court overrules Plaintiff's Objection (ECF No. 170) to Judge Shaffer's Order (ECF No. 169) denying Plaintiff's Motion to Supplement (ECF No. 163), since the Motion to Supplement was properly denied.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Plaintiff's Amended Written Objection to the Magistrate Judge's Proposed Findings and Recommendations (ECF No. 259) is OVERRULED;

2.  Judge Shaffer's Report and Recommendation (ECF No. 237) is ADOPTED in its entirety;

3.  The Murray Defendants' Motion to Dismiss (ECF No. 135) is GRANTED;

4.  The Denver Defendants' Motion to Dismiss (ECF No. 137) is GRANTED;

5.  The Colorado Defendants' Motion to Dismiss (ECF No. 139) is GRANTED;

6.  The SPAL Defendants' Motion to Dismiss (ECF No. 141) is GRANTED;

7.  The Illinois Defendants' Motion to Dismiss (ECF No. 142) is GRANTED;

8.  Dr. Spiegle's Motion to Dismiss (ECF No. 186) is GRANTED;

9.     Consistent with the analysis in the Recommendation, the constitutional claims asserted against the Colorado Defendants are dismissed WITH PREJUDICE; all other claims are dismissed WITHOUT PREJUDICE for lack of jurisdiction;

10.     Plaintiff's Objection and Motion for Court Review of Magistrate Judge's Order to Supplement (ECF NO. 170), reviewed as an Objection under Fed. R. Civ. P. 72(b) to Judge Shaffer's Order (ECF No. 169) denying Plaintiff's Verified Motion for Leave to File Supplemental Complaint (ECF No. 163), is OVERRULED as futile; and

11.     The Court will address Plaintiff's Motion for Review of Order on Motion for Sanctions (ECF No. 273), as well as his recently-filed Motion for Leave to Amend (ECF No. 275) and Motion to Consolidate (ECF No. 279), by separate Order.

Dated this 28th day of February, 2018.

BY THE COURT:

William J. Martínez
United States District Judge